UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

UNITED STATES OF AMERICA,

                Plaintiff,

      v.                                                 **DECISION AND ORDER**
                                                            11-CR-151-RJA

ESTEBAN RAMOS-CRUZ,

                Defendant.

───────────────────────────────

Defendant Esteban Ramos-Cruz has filed a *pro se* motion (Dkt. Nos. 1111, 1113 [supplement to motion]) for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018, in which he also requests that the Court appoint counsel to represent him in relation to his motion (*see* Dkt. No. 1111, p. 30; Dkt. No. 1119, p. 1). The Government filed a response in opposition (Dkt. Nos. 1116 [redacted], 1118 [unredacted]), and Defendant submitted reply papers (Dkt. No. 1119). For the following reasons, Defendant's motion for a sentence reduction under the compassionate release statute is DENIED, as is his request to appoint counsel.

## **BACKGROUND**

On September 11, 2015, Defendant pled guilty to Count 1 of the Superseding Indictment, which charged him with a violation of 18 U.S.C. § 1963(d) (RICO Conspiracy), for which the maximum possible sentence was a term of imprisonment

of life.  Dkt. No. 624 (plea agreement), ¶ 1.  In their plea agreement, the parties agreed that Defendant, on August 11, 2009, and as a member of Cheko's Crew/7th Street Gang, murdered Eric Morrow, a member of the rival 10th Street Gang, by shooting him with a .22 caliber rifle.  Dkt. No. 624, ¶ 5e.  The parties further agreed to the application of United States Sentencing Guideline ("Guideline" or "U.S.S.G.") § 2A1.1(a) (First Degree Murder), such that following a reduction for acceptance of responsibility, Defendant, with a total offense level ("TOL") of 40 and a Criminal History Category ("CHC") III, was facing a sentencing range of imprisonment of 360 months to life.  Dkt. No. 624, ¶¶ 8, 12; see also Dkt. No. 784 (PSR), ¶ 67.

At Defendant's sentencing, on May 18, 2016, this Court imposed a sentence of 360 months' imprisonment, the low-end of the range.  Dkt. No. 786 (judgment).  In July of 2017, this Court granted a further two-level reduction of Defendant's offense level, a request that was made in the Government's motion pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure.  With a TOL of 38 and a CHC III, Defendant then faced a reduced sentencing range of 292 to 365 months.  This Court sentenced Ramos-Cruz to 292 months' imprisonment, the low end of the applicable range.  Dkt. No. 965 (amended judgment).  In January of 2024, Defendant filed a counseled motion pursuant to 18 U.S.C. § 3582(c)(2) (Dkt. No. 1089) due to retroactive amendment of the Guidelines, seeking a sentence reduction based upon the status-points portion of Amendment 821, enacted November 1, 2023.  The Court granted Defendant's motion (Dkt. No. 1106 [Decision and Order]; Dkt. No. 1108 [Order]), finding that the amendment applied and reduced Defendant's CHC from Category III to II, resulting in a post-Rule 35, Guidelines range of imprisonment of

262 to 327 months. Upon consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a) and all the circumstances presented, the Court made a discretionary determination that Defendant's sentence should be reduced to 262 months, again, the low-end of the applicable range.

On May 9, 2025, Defendant filed the instant compassionate release motion, asserting that his medical issues, his participation in the National Gang Unit Drop-Out Program, his efforts at rehabilitation, and his young age at the time of the offense and his dysfunctional upbringing,[1] constitute extraordinary and compelling reasons for his early release from incarceration. Defendant, who is 39 years old, is currently incarcerated at Federal Correctional Institution, Fairton, New Jersey ("FCI Fairton"), and his projected release date is January 4, 2030.[2]

## DISCUSSION

"The First Step Act's 'compassionate release' provision, 18 U.S.C. § 3582(c)(1)(A), provides an exception to the general rule that a court may not modify a term of imprisonment after it has been imposed." *United States v. Luke*, No. 14-CR-06089-FPG, 2024 U.S. Dist. LEXIS 72005, *3 (W.D.N.Y. Apr. 19, 2024) (internal

---

[1] Defendant's age-and-upbringing argument was asserted only in passing in his initial motion papers and after his "Conclusion" to the motion (*see* Dkt. No. 1111, p. 12), which is likely why the Government did not address it in its opposition. The argument then resurfaced as the principle focus in Defendant's reply (*see* Dkt. No. 1119, pp. 4-18). For the sake of judicial economy, the Court will address it herein the same as it does Defendant's other arguments.

[2] *See Inmate Locator: Register Number 94282-038*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited 2/19/2026); *see also* Dkt. No. 1118, pp. 119-120 (Ex. D, Gov't Opp. [noting projected release date accounting for good conduct time]).

3

citation omitted), *aff'd*, 24-1141, 2025 U.S. App. LEXIS 5477 (2d Cir. Mar. 10, 2025) (summary order).  Under this provision, a court may reduce the term of imprisonment if, "after considering the factors set forth in section 3553(a)," the court finds that "extraordinary and compelling reasons warrant such a reduction…and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i) (alterations omitted); *see United States v. Keitt*, 21 F.4th 67, 73 (2d Cir. 2021) (per curiam).

"When considering a § 18 U.S.C. 3582(c)(1)(A) motion, a district court is not bound by a binary choice of immediate release or denial."  *United States v. Orellana-Torres*, 2:10-cr-00074-JMA-18, 2025 U.S. Dist. LEXIS 64182, *2 (E.D.N.Y. Apr. 3, 2025).  Indeed, "compassionate release is a misnomer," as section 3582(c)(1)(A) "in fact speaks of sentence reductions."  *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020).  For example, a district court could "reduce but not eliminate a defendant's prison sentence, or end the term of imprisonment but impose a significant term of probation or supervised release in its place."  *Id.*  It is a defendant's burden to show that he or she is entitled to a sentence reduction under § 18 U.S.C. 3582(c)(1)(A).  *See United States v. Jones*, 17 F.4th 371, 375 (2d Cir. 2021) (per curiam).

Preliminarily, "absent waiver or forfeiture by the government" (*Keitt*, 21 F.4th at 71), a defendant may not bring a motion for compassionate release until after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [hereinafter, 'BOP'] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the

defendant's facility, whichever is earlier" (18 U.S.C. § 3582(c)(1)(A)).  Defendant submitted a compassionate release request to the Warden of FCI Fairton, dated April 1, 2025, and received by the Warden on April 9, 2025; the Warden denied that request on May 28, 2025 (after 30 days from receipt of the motion had lapsed).  *See* Dkt. No. 1111, p. 3, and Dkt. No. 1113, pp. 3-4.  Defendant filed the instant motion with this Court on May 9, 2025, and claimed that he had not yet received a response from the Warden.  Dkt. No. 1111, p. 3.  In a supplement to his motion, Defendant updated the Court that he received a response on May 29, 2025.  Dkt. No. 1113, p. 1.  The Government states that "[o]n these facts, [it] consents to the Court deciding the merits of the defendant's motion for a reduced sentence."  Dkt. No. 1118, p. 6 n.3.  Based upon the Government's waiver of the exhaustion issue and the circumstances presented, the Court will consider Defendant's motion on the merits.

**I.     Extraordinary and Compelling Circumstances**

A defendant "must demonstrate that his proffered circumstances are indeed 'extraordinary and compelling' such that…a sentence reduction…would not simply constitute second-guessing of the sentence previously imposed." *Keitt*, 21 F.4th at 71.  Congress expressly delegated authority to the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."  28 U.S.C. § 994(t).  Guideline § 1B1.13(b) sets forth the Sentencing Commission's policy statements regarding "extraordinary and compelling reasons" that warrant a sentence reduction.

Defendant argues that his medical conditions constitute an extraordinary and compelling reason for a sentence reduction. The Court has carefully reviewed the medical records obtained by the parties from the BOP. *See* Dkt. No. 1111, pp. 38-80 (Ex. 2, Def's Mtn.); Dkt. No. 1118, pp. 27-113 (Ex. B., Gov't Opp.). Although Defendant does suffer from several health conditions as indicated by Defendant in his motion, that is, asthma, migraine headaches, and "mental health that is in remission" [anxiety disorder and major depressive disorder]) (Dkt. No. 1111, pp. 8-9), as far as the Court can tell from this record, the BOP is adequately treating and monitoring Defendant's medical conditions.

As to Defendant's asthma, he reported being diagnosed with this condition as a child and stated that "as an adult he is able to manage his asthma with Albuterol inhaler only," with his asthma being triggered "mostly by exercise." He reported no history of hospitalizations due to his asthma or any prior diagnosis of pneumonia. In addition, Defendant was prescribed a daily medication (and took Motrin) for his migraine headaches that he reported "help[ed] with preventing HA [headaches]." Providers noted that his migraines were "currently well managed" with medication. Both Defendant's anxiety and major depressive disorder were in "remission" in the latest set of records. He was diagnosed with bipolar type 1 as a child and stated he managed that condition well on current medications, indicating a stable mood. At some point, his mental health medications were discontinued due to medication noncompliance, but Defendant denied any current mental health concerns. Overall, Defendant was classified by the BOP as Medical Care Level 2 and Mental Health

Care Level 1, and he had no work restrictions or limitations imposed due to his physical or mental health.

Defendant concedes in his reply that he is "getting treatment and proper care" for most of his health issues. Dkt. No. 1119, p. 4. He only argues that his asthma was worsened by the COVID-19 virus, and that although his asthma is currently "under control," he is "at risk of imminent death in a situation like the COVID pandemic." Dkt. No. 1119, p. 4. There is no proof that Defendant suffered a bout of COVID-19 or that such illness exacerbated his asthma. COVID-19 is mentioned in his medical records only with respect to Defendant testing negative for the virus three times (Dkt. No. 1118, p. 78 (negative tests on 12/21/2020, 12/28/2020, and 4/19/2021)) and as to Defendant's "complete" history of COVID-19 vaccination as of August 21, 2023 (Dkt. No. 1118, p. 44).

Even if Defendant previously contracted the COVID-19 virus, the Court rejects Defendant's argument that his sentence should be reduced based upon COVID-19 and its impact on his health. "COVID-19 is no longer considered a federal ongoing public health emergency" (*United States v. Jimenez Cruz*, 19-CR-326 (KMW), 2024 U.S. Dist. LEXIS 152680, *4-5 (S.D.N.Y. Aug. 26, 2024) (internal citations omitted), and "the ubiquitous availability of the COVID-19 vaccination and treatment options for those who do become infected, has eliminated COVID-19 as a basis for granting compassionate release; even for those persons whom the CDC has in the past said were at risk of suffering a severe outcome if they were to become infected—a category into which [Defendant] might arguably fall" (*United States v. Douglas*, 04-CR-1065 (CM), 2024 U.S. Dist. LEXIS 117215, *7 (S.D.N.Y. July 2, 2024)).

7

Defendant's related argument, that he should be released early from the BOP because of the potential future impact on his health should another pandemic akin to the COVID-19 pandemic occur, is speculative.

In short, this Court finds that Defendant has not demonstrated that he is suffering from a "serious physical or medical condition…that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility" (U.S.S.G. § 1B1.13(b)(1)(B)); that he is a "suffering from a medical condition that requires long-term or specialized medical care that is not being provided" (U.S.S.G. § 1B1.13(b)(1)(C)); or that there is "an ongoing outbreak of infectious disease" or "an ongoing public health emergency" and Defendant's situation meets the other criteria as outlined by the Sentencing Commission (U.S.S.G. § 1B1.13(b)(1)(D)).

The bulk of Defendant's extraordinary-and-compelling argument is that he was young at the time he committed the offense of conviction and his upbringing left him more vulnerable to negative peer influences; and he has had "success[ ]" participating in the National Gang Unit Drop-Out Program managed by the BOP, through which he has made "efforts to break ties from his gang affiliat[ions]."[3] Defendant argues that these circumstances, either singularly or together, fall under the "catch-all category" of Guideline § 1B1.13(b)(5). Said category provides that "extraordinary and compelling reasons" exist where "[t]he defendant presents any

---

[3] The Court observes that Defendant first made mention of cutting ties with his gang affiliations in email correspondence dated March 9, 2024, submitted as an exhibit to his motion for a sentence reduction under § 3582(c)(2). See Dkt. No. 1104-1, pp. 1-2 (Ex. A, Def's Reply ["i was in a gang and i drpped out…thats not my life no more"]).

8

other circumstance or circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4) [terminal illness or serious medical condition, advanced age, extraordinary family circumstances, abuse while in custody], are similar in gravity to those described in paragraphs (1) through (4)."

Defendant argues a reduced sentence is warranted because he was only 22 years old at the time of the shooting death of Morrow, and he was "raised in a highly dysfunctional household as a child." He references revisions to Guideline § 5H1.1 ("Age (Policy Statement)"), which took effect pursuant to Amendment 829 on November 1, 2024, and provided that "a downward departure…may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses." Revised § 5H1.1 set forth "[c]ertain risk factors" that "may affect a youthful individual's development into the mid-20's and contribute to involvement in the criminal justice system," including "environment, adverse childhood experiences, substance use, lack of educational opportunities, and familial relationships."

There are several flaws with Defendant's argument. First, "Amendment 829…does not apply retroactively"; as such, it does not apply to Defendant, who was sentenced before it went into effect. *United States v. Henoa*, 96-CR-355 (ARR), 2024 U.S. Dist. LEXIS 30739, *5-6 (E.D.N.Y. Feb. 22, 2024) (collecting cases); *see* U.S.S.G. § 1B1.13(c) (stating that any amendment to the Sentencing Guidelines that has not been made retroactive "shall not be considered for purposes of determining whether an extraordinary and compelling reason exists"). "Furthermore, on November 1, 2025, Section 5H1.1 - the age-related policy

9

statement modified by Amendment 829 - was deleted by subsequent Amendment 836." *Henoa*, 2024 U.S. Dist. LEXIS 30739, at *6; *see United States v. Jones*, 4:21 CR 261 CDP, 2026 U.S. Dist. LEXIS 26171, *3 (E.D. Mo. Feb. 9, 2026) ("The Sentencing Commission recently amended the Guidelines…to remove departures and policy statements relating to specific personal characteristics. Through Amendment 836, effective November 1, 2025, Part H of Chapter 5 was stricken in its entirety from the Guidelines, thereby removing the basis of [defendant]'s argument [for compassionate release].").

For the sake of argument, even if the Court were to apply the Sentencing Guidelines in effect at the time Defendant filed his motion—that is, before section 5H1.1 was removed from the Guidelines— "a court may take an excluded amendment into account - but only if it finds an *underlying* extraordinary and compelling reason." *Henoa*, 2024 U.S. Dist. LEXIS 30739, at *6 (emphasis added, citing U.S.S.G. § 1B1.13(c) (providing that a non-retroactive guideline amendment may be considered in determining the "extent" of a sentencing reduction if a defendant has "otherwise" established an extraordinary and compelling reason under § 1B1.13(c)); *see Jones*, 2026 U.S. Dist. LEXIS 26171, at *3 ("Other than citing Amendment 829 factors relating to his youth, [defendant] does not cite any independent extraordinary and compelling reason for a reduced sentence. On that basis alone, [defendant]'s motion for compassionate release must be denied.").

To be sure, courts in this Circuit have granted compassionate release to defendants who were young at the time of their offenses of conviction, albeit when a confluence of other factors were presented. Defendant relies heavily on *United*

*States v. Ramsay*, 538 F. Supp. 3d 407 (S.D.N.Y. 2021). When the defendant in *Ramsay* was sentenced, he was subjected to a then-mandatory life sentence for murder in aid of racketeering, meaning the district court was precluded from considering his age at the time of the offense conduct—18 years old—in imposing its sentence. *Id.* at 426-27. The district court commented that "[t]he mandatory life sentence weighed heavily on the Court at sentencing because the Court recognized that the sentence was likely greater than necessary to satisfy the purposes of criminal sentencing," as was reflected in its comments made at the sentencing hearing. *Id.* at 427. The Court considered that factor, along with a host of other factors that it found were extraordinary circumstances, in eventually arriving at a sentence reduction to 360 months' imprisonment. *Id.* at 424-26, 429. Those factors included the defendant's youth at the time of the offense, which was "highly relevant" because the defendant's "decision to fire into a crowd ha[d] all the hallmarks of adolescent crime: a split-second, hot-headed choice made in the presence of peers." *Id*. at 424. The Court also discussed at length the defendant's "history of childhood abuse and neglect" and his "compelling evidence of rehabilitation." *Id.* at 424-26; *see also id.* at 410-11, 413-14.

Here, in contrast to the district court in *Ramsay*, the Court considered the 18 U.S.C. § 3553(a) factors in imposing a sentence at the low-end of the Guidelines range, which necessarily included its contemplation of Defendant's age at the time of the offense and his upbringing. *See* 18 U.S.C. § 3553(a)(1) (the court shall consider "the nature and circumstances of the offense and the history and characteristics of the defendant"); *see also* Dkt. No. 784 (PSR), p. 2 (listing

11

Defendant's date of birth), ¶ 22 ("The Cheko's Crew/7th Street gang enterprise recruited younger members, including juveniles, to join the gang and directed them to commit acts of violence and drug trafficking crimes on behalf of the gang…"), ¶ 26 (noting that Defendant shot and killed Morrow on August 11, 2009), Part D ("Offender Characteristics"); Dkt. No. 946 (Sentencing Tr.), pp. 6-7 (defense counsel argued, in asking for a 360-month sentence, that "older gang members" took advantage of Defendant and he feared their threats of harm should he fail to "carry out their orders," which contributed to his gang activity). The Court performed this same § 3553(a) analysis when it reduced Defendant's sentence on two other occasions after his original sentencing. Additionally, in *Ramsay*, the evidence of rehabilitation and a damaging childhood (which the Southern District explained included "severe physical abuse" by "various caregivers") were both much stronger in that case that in the instant case.

      To the extent it can be argued the retaliation murder of Morrow took place in a high-pressure, time-sensitive, and emotional context, in which it could be expected a 22-year-old might make a riskier decision to engage in such conduct (*see Ramsay*, 538 F. Supp. 3d at 417-20, 424),[4] other circumstances would weigh against recognizing Defendant's youth as an extraordinary and compelling reason for a sentence reduction. It is compelling to this Court that in the week following Morrow's murder, Defendant and his fellow gang members continued looking for 10th Street

---

[4] The Court presumes the Government would posit otherwise, since its opposition noted this "cold and calculated premeditated gang-related murder [that was] part of an ongoing and lengthy gang war that raged on Buffalo's West Side for years."

12

gang members to shoot and kill.  See Dkt. No. 784 (PSR), p. 13 ("Sometime between August 11, 2009, and August 17, 2009, Ortiz, Efrain Hidalgo, the defendant, and others, while equipped with firearms, drove past the corner of Auburn Street and West Avenue seeking out rival 10th Street gang members to murder.").  Any arguments pertaining to Defendant's youth and immaturity are also tempered by the fact that Defendant's membership in/association with Cheko's Crew/7th Street Gang began in 2000 and continued until 2012.  See Dkt. No. 624, ¶ 5a.  Thus, although Defendant was 22 years old at the time he personally committed the murder, for several years after Morrow's death and into his mid-20's, Defendant continued in his association with the enterprise—which included the possession of firearms to protect the territory of the enterprise and retaliate against the 10th Street gang, and the sale of heroin in the territory controlled by the gang.

With respect to the National Gang Unit Drop-Out Program, Defendant argues that his gang denunciation extends beyond rehabilitation and therefore could independently serve as an extraordinary and compelling reason for his early release. Defendant reasons that by providing useful information to federal agencies to "combat gang activity" and by potentially placing his life in danger by doing so, the program "not simply a rehabilitation program."  Assuming the truth of Defendant's representations that he is a participant in this program and has renounced any gang affiliation,[5] the Court disagrees that Defendant's gang renunciation is an extraordinary and compelling reason for a sentence reduction.

---

[5] The Government points out that Defendant has not submitted any evidence to support his allegation, but it also does not dispute that Defendant's assertions are based in fact.

13

Defendant relies upon an out-of-Circuit decision, *United States v. Beres*, Crim. Act. No. 18-58-BLG-SPW-02, 2023 U.S. Dist. LEXIS 226895 (D. Mont. Dec. 20, 2023), in which the defendant argued that his "successful participation in the 'drop out' program," including his "'drop tag' designation," rose to the level of extraordinary and compelling under Guideline § 1B1.13(b)(5). *Id.* at *3. The district court agreed, reasoning that the defendant "provided a service beyond his own rehabilitation and at his own risk." *Id.* at *4-5.

The Court is unaware, however, of any Second Circuit authority that recognizes gang disassociation as a standalone extraordinary and compelling circumstance that is "similar in gravity," Guideline § 1B1.13(b)(5), to the circumstances outlined in Guideline § 1B1.13(b)(1)-(4). Rather, district courts in this Circuit have simply considered participation in such a program as part of defendants' total rehabilitation efforts. *See*, *e.g.*, *United States v. Chavez*, 02 CR 1301 (VM), 2025 U.S. Dist. LEXIS 250404, *5-6 (S.D.N.Y. Dec. 4, 2025); *United States v. McLean*, 10-CR-391-29 (CM), 2025 U.S. Dist. LEXIS 146422, *4-5, 7 (S.D.N.Y. July 30, 2025); *United States v. Chavez*, 757 F. Supp. 3d 585, 593-94 (S.D.N.Y. 2024); *United States v. Andrews*, 705 F. Supp. 3d 142, 151 (S.D.N.Y. 2023); *see also United States v. Carabello*, 5:12-cr-00105-1, 2025 U.S. Dist. LEXIS 139833, *8 (D. Vt. July 22, 2025) (stating at the tail-end of the decision and order, "[a]lthough the

---

*See* Dkt. No. 1118, p. 8 ("to the extent the defendant has been enrolled in a 'gang dropout'…"). In his reply, Defendant counters that he has not submitted any evidence to the Court concerning the program because such documents are sensitive and/or classified, "making it hard to obtain or extract [them]" (Dkt. No. 1119, p. 18). He maintains he is currently classified as an inactive gang member, and he is housed at a "drop-out" FCI facility.

14

court commends [defendant] on severance of his gang affiliations as well as his efforts at rehabilitation which he describes as a 'complete 180 degree[,]' the facts and circumstances of this case do not warrant a sentence reduction at this time").

Relatedly, Defendant contends that his rehabilitation while in BOP custody constitutes an extraordinary and compelling reason for a reduction in his sentence. The Court finds that he has established his efforts at rehabilitation through employment and the completion of numerous educational programs during his period of incarceration, as well as through his asserted denunciation of gang affiliations as is discussed above. Even so, rehabilitation is "not, by itself, an extraordinary and compelling reason" for a sentence reduction. U.S.S.G. § 1B1.13(d), citing 28 U.S.C. § 994(t). Although commendable, "a productive institutional record while incarcerated ... is what is expected[.]" *United States v. Baptiste*, 15-CR-854 (SHS), 2024 U.S. Dist. LEXIS 124854, *5 (S.D.N.Y. July 16, 2024) (internal quotation marks and citation omitted).

The Court hereby finds that Defendant has not presented extraordinary and compelling reasons for compassionate release.

II. **18 U.S.C. § 3553(a) Factors**

Even if Defendant could demonstrate that an extraordinary and compelling reason for a sentence reduction exists, the Court would nonetheless conclude that compassionate release is not warranted upon its consideration of the factors under 18 U.S.C. § 3553(a). These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as "the need for the sentence imposed…to reflect the seriousness of the offense, to promote

15

respect for the law, and to provide just punishment for the offense"; "to afford adequate deterrence to criminal conduct"; and the need "to protect the public from further crimes of the defendant" and "to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. §§ 3553(a)(1), (a)(2)(A) through (C), (a)(6).

As set forth above, approximately two years ago, the Court exercised its discretion in granting Defendant's motion to modify his sentence pursuant to 18 U.S.C. § 3582(c)(2), in light of a retroactive amendment to the Guidelines that lowered his CHC.  The Court addressed the Government's opposition to any reduction of Defendant's sentence, reasoning as follows:

> As to the violent nature of the offense and his criminal history, this Court notes that both of those factors remain unchanged from both times this Court previously sentenced [Defendant] at the lowest end of the applicable range.  In other words, this Court determines that for the same reasons that a sentence at the bottom of the Guideline range was appropriate when [Defendant] was initially sentenced in 2016, and when this Court granted the Government's Rule 35 motion in 2017, sentencing at the bottom end of the new Guideline range remains appropriate here.  The Court further notes that while [Defendant] has sustained eight disciplinary violations during his 12 years of incarceration, this Court has also considered the nature of those violations, the fact that he has not sustained any disciplinary violations in over three years, and the fact that he has taken advantage of extensive programming and been employed during the period.

Dkt. No. 1106, pp. 4-5.

Again, Defendant's criminal history and the severity of his offense conduct remain unchanged, and the Court need not reiterate those here.

In his reply papers, Defendant concedes that his disciplinary record "is not spotless," but points out that he has not sustained any disciplinary violations since the Court last modified his sentence—meaning he has remained violation-free for over five years now, since January 29, 2021. He also acknowledges that he presented much of the same evidence of his rehabilitation in support of his § 3582(c)(2) motion as he did in support of the instant motion, but argues that his continued coursework since that date and his current engagement in the National Gang Unit Drop-Out Program show that he is "truly committed" to his rehabilitation. *Compare* Dkt. No. 1104-1, pp. 3-7 (Ex. B, Def's Reply, Summary Reentry Plan – Progress Report, dated 1/23/2024) *with* Dkt. No. 1111, pp. 16-19 (same); *but see* Dkt. No. 1111, pp. 22, 24 (documenting participation/completion of education courses in 2024 and 2025, and positive feedback regarding literacy program participation) and Dkt. No. 1119, pp. 25-30 (Ex. I, Def's Reply, certificates of completion for 2024 and 2025).

The Court appreciates Defendant's sustained rehabilitation efforts in BOP custody, which should certainly assist in his adjustment upon his ultimate release from incarceration. However, considering the remainder of the sentence Defendant has left to serve, the seriousness of Defendant's offense conduct and criminal history, and the need to adequately deter criminal conduct and to avoid unwarranted sentencing disparities, the Court determines that a sentence of 262 months remains sufficient but not greater than necessary to fulfill the purposes of sentencing.

**CONCLUSION**

As set forth above, because Defendant has not shown extraordinary and compelling circumstances and because any sentence reduction would be inconsistent with the factors set forth in 18 U.S.C. § 3553(a), Defendant's motion for compassionate release (Dkt. No. 1111) under 18 U.S.C. § 3582(c)(1)(A) is DENIED. Furthermore, in the exercise of the Court's discretion, Defendant's request to appoint counsel is DENIED.  *See United States v. Feliz*, 2023 U.S. Dist. LEXIS 213357, *4-5 (S.D.N.Y. Nov. 30, 2023) ("Generally, a defendant has no right to the assistance of counsel in filing a motion for compassionate release... [I]t is within the district court's discretion whether to appoint counsel... In exercising that discretion, a district court may consider whether the defendant's compassionate release motion would likely be successful.") (internal quotation marks and citations omitted).

    **IT IS SO ORDERED.**

                                             *s/Richard J. Arcara*
                                             HONORABLE RICHARD J. ARCARA
                                             UNITED STATES DISTRICT COURT

Dated:  February 19, 2026
        Buffalo, New York